## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
LAWRENCE WILLIAM KLUTE,                          )
                                                )
            Plaintiff,                           )
                                                )
      v.                                         )          Civil Action No. 10-1126 (RBW)
                                                )
ERIC SHINSEKI,                                   )
Secretary, Department of Veterans Affairs,       )
                                                )
            Defendant.                           )
_____)

### <u>MEMORANDUM OPINION</u>

This case arises from claims brought pursuant to the Rehabilitation Act of 1973, 29

U.S.C. §§ 791, 794a (2006), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e-2 (2006).  Second Amended Complaint ("2d Am. Compl.") ¶ 4.  The plaintiff

asserts that the defendant discriminated against him based on his disability, race, and sex.  <u>Id.</u> ¶

1.  Currently before the Court is the Defendant's Motion to Dismiss, or in the Alternative,

Defendant's Renewed Motion for Summary Judgment ("Def.'s Mot.").  For the reasons explained

below, the Court will grant the defendant's motion, and grant summary judgment in favor of the

defendant on all of the plaintiff's claims.[1]

---

[1]      In addition to the filings already referenced, in resolving the Defendant's Motion to Dismiss, or in the
Alternative, Defendant's Renewed Motion for Summary Judgment, the Court considered the following documents:
the Defendant's Statement of Material Facts Not in Dispute ("Def.'s Stmnt."); the Memorandum of Points and
Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative, Defendant's Renewed Motion for
Summary Judgment ("Def.'s Mem."); the plaintiff's Opposing Points and Authorities ("Pl.'s Opp'n"), which
incorporates the plaintiff's earlier-filed Plaintiff's Opposition to Summary Judgment ("Pl.'s 11/22/10 Opp'n"), its 66-
page Appendix, and the Plaintiff's Response to Defendant's Material Facts ("Pl.'s 11/22/10 Resp. to Def.'s Facts");
and the Defendant's Reply to Plaintiff's "Opposing Points and Authorities" ("Def.'s Reply").

## I. BACKGROUND

A.  The Plaintiff's Factual Assertions

Drawing all justifiable inferences in favor of the plaintiff, as the Court must, the factual allegations underlying this lawsuit are as follows.  In 1997 the plaintiff suffered a stroke and consequently developed several physical impairments, including peripheral vascular disease, diabetes, stenosis, lumbar arthritis, and emotional difficulties.  2d Am. Compl. ¶ 9.  These conditions affected the plaintiff's ability to write, speak, see, walk, and concentrate.  Id.  Nonetheless, the plaintiff, an attorney who had held various legal positions in private practice and the government, obtained employment with the Department of Veterans Affairs ("VA") in January 2006, where he worked until April 1, 2010.  Id. ¶ 7.  The plaintiff began his employment at the VA as a GS-11-level employee, and had advanced to the GS-13 level when he retired from the VA.  Id.  During his time at the VA, the plaintiff worked for four different judges on the Board of Veterans Appeals.  Pl.'s 11/22/10 Opp'n, App. at 26.[2]

As an associate attorney at the VA, the plaintiff was required to meet a quota, or "production requirement," of 156 credits (i.e., cases) per year.  See Pl.'s 11/22/10 Opp'n, Appendix ("App.") at 14-15.  The plaintiff asserts that the VA "had a policy going back a number of years that specifically permitted a downward departure from the number of decisions a staff attorney had to produce if that lawyer had a serious medical condition."  2d Am. Compl. ¶ 10.  The plaintiff further maintains that the VA had a "policy that a staff attorney could request a transfer [to a different decision team] at any time," and that he therefore "did not need a reason to

---

[2]       The plaintiff submitted a 66-page appendix with his 11/22/10 opposition brief.  The plaintiff's numbering of the pages and the page numbers assigned by the Court's electronic docketing system ("ECF") do not correspond and are different by one page.  The Court's references to documents in the appendix will correspond to the ECF page numbers.

request the transfer to a different supervisor."  Id. ¶ 12.  He claims that "[m]inorities and women routinely requested such transfers and these requests were granted," while he, an allegedly disabled "white male, was denied the [requested] transfer."  Id.

In March 2008, the plaintiff began working for Judge Bohan of the Board of Veterans Appeals.  Pl.'s 11/22/10 Opp'n, App. at 26 (Dec. 29, 2008 Perman Letter).  "Things went well until June 11, 2008[,] when he received an 'untimely' rating on a case by Judge Bohan."  Id.  The plaintiff continued to receive "untimely and unsatisfactory" ratings on his work from Judge Bohan.  Id.  "Until these problems began, [the plaintiff] received eight outstanding ratings and complimentary notes.  He even received an 'outstanding' rating from a different judge while working for Judge Bohan in September 2008."  Id.

On November 17, 2008, the plaintiff e-mailed James Terry, the Chairman of the Board of Veterans Appeals, stating that he had "been assigned to write for Judge Barry Bohan since March 2008," and explaining that because his "current professional work relationship with Judge Bohan and [Deputy Vice Chairman] Cohn [did] not appear to be working out," he was requesting a transfer to a different decision team.  Def.'s Mot., Exhibit ("Ex.") 1 (Nov. 17, 2008 E-mail).  In that e-mail, the plaintiff observed that he had "worked successfully for two judges, and [had] taken pride in receiving occasional outstanding ratings for [his] writing" since he began his work with the VA in 2006.  Def.'s Mot., Exhibit ("Ex.") 1 (Nov. 17, 2008 E-mail).

The plaintiff maintains that he is disabled and could not meet his production quota unless he worked "excessive hours."  2d Am. Compl. ¶ 17.  Specifically, the plaintiff's psychiatrist diagnosed him with adjustment disorder with mixed anxiety and depression.  Def.'s Mot., Ex. 3 (December 9, 2008 Letter from Gerald P. Perman, M.D., P.A. ("Dec. 9, 2008 Perman Letter").

The psychiatrist believed that the plaintiff began suffering from the adjustment disorder with mixed anxiety and depression on June 11, 2008.  Id.; see also Pl.'s 11/22/10 Opp'n, App. at 54 (May 18, 2010 Report of Dr. Richard Sutton) ("Until June [2008], Mr. Klute reported he had done well in his position with the [VA] and enjoyed the challenges of his work.").  According to the plaintiff, this condition worsened to the point that in December 2008, he needed an accommodation to continue working. 2d Am. Compl. ¶ 10; see also Pl.'s 11/22/10 Opp'n, App. at 26 (Dec. 9, 2008 Perman Letter) ("Mr. Klute has fallen behind on his weekly case quotas because of the depression, anxiety[,] and difficulty concentrating that working for Judge Bohan has resulted in.").  The plaintiff twice requested, once through his psychiatrist, an accommodation in December 2008: first on December 9, 2008, and again on December 29, 2008. See 2d Am. Compl. ¶¶ 10-11.  On each occasion the requested accommodation consisted of a reduced caseload and transfer to another "decision team" (or supervisor). 2d Am. Compl. ¶¶ 10-11; Def.'s Stmnt. ¶ 7.  Each time the request was denied.  2d Am. Compl. ¶¶ 10-11; Def.'s Stmnt. ¶ 7.  In March 2009, the plaintiff "again requested a waiver of the fair share production requirements [i.e., a reduced caseload] and a transfer to a different decision team [i.e., a different supervisor]." 2d Am. Compl. ¶ 16.  The requests were also denied by letter dated March 9, 2009. Id.

The plaintiff asserts that because of the allegedly discriminatory treatment, he "missed work from December 9, 2008[,] to March 30, 2009, and was placed under severe emotional stress." 2d Am. Compl.  ¶ 14.  "He nevertheless returned to work" and "was threatened with a performance improvement plan under the same supervisor due to his failure to meet the case production requirements." Id. ¶¶ 14-15.  Because of the allegedly discriminatory treatment, the

plaintiff retired on March 31, 2010.  Id. ¶ 17.  He claims that he "would not have left federal

service if he had been granted the accommodations he requested."  Id.

       B.  Procedural History and the Parties' Arguments

       The plaintiff originally filed his complaint on July 2, 2010.  He then filed an Amended

Complaint on August 6, 2010, alleging discrimination in violation of the Rehabilitation Act, Title

VII, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102, 12111-12 (2006).

The defendant filed his first motion for summary judgment on November 5, 2010.  On July 12,

2011, the Court, acting sua sponte, dismissed all claims without prejudice, denied without

prejudice the defendant's motion for summary judgment, and directed the plaintiff to file a

second amended complaint.  See Klute v. Shinseki, Civil Action No. 10-1126 (RBW), 2011 WL

2750932, at *1 (D.D.C. July 12, 2011).

       As he has from the inception of this lawsuit, the plaintiff asserts that the denials of his

requests for reasonable accommodations in the form of a reduced workload and a different

supervisor constituted disability, race, and sex discrimination.  2d Am. Compl. ¶ 1.  The

defendant responds by arguing that the plaintiff has not shown that he is disabled within the

meaning of the Rehabilitation Act, Def.'s Mem. at 11, and that his claims of race and sex

discrimination must fail because he has not rebutted the defendant's proffer of a legitimate,

nondiscriminatory reason for the VA's refusal to transfer him to another decision team, id. at 15.

This Memorandum Opinion addresses these arguments.

## II.  STANDARD OF REVIEW

       Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule

12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the

motion must be treated as one for summary judgment under Rule 56."[3]  Fed. R. Civ P. 12(d).

Under Rule 56, summary judgment is appropriate where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party" on an element of the claim.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  When ruling on a Rule 56 motion, the Court must view the evidence

in the light most favorable to the nonmoving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C.

Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court

must therefore draw "all justifiable inferences" in favor of the nonmoving party and accept the

nonmoving party's evidence as true.  Anderson, 477 U.S. at 255.  The nonmoving party,

however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C.

Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted), because

"conclusory allegations unsupported by factual data will not create a triable issue of fact," Pub.

---

[3]	Both parties have presented materials outside the pleadings.  First, along with his motion and his reply to the plaintiff's opposition, the defendant has submitted declarations and several exhibits in support of his argument that the plaintiff was not disabled within the meaning of the Rehabilitation Act.  Second, the plaintiff's Opposing Points and Authorities incorporates his previously filed statement of disputed material facts, his previous opposition brief, and his previously filed opposition brief appendix, which includes, among other things, his medical records and excerpts of depositions taken at the administrative level.  See Pl.'s Opp'n at 3, 4, 5 (all making reference to the plaintiff's previously filed documents).  As all of these filings directly pertain to the parties' arguments that the plaintiff either was or was not disabled within the meaning of the Rehabilitation Act, the Court will treat the defendant's motion as one for summary judgment under Rule 56.  See Rand v. Geithner, 609 F. Supp. 2d 97, 101-02 (D.D.C. 2009) (citing Rule 12(d) as the procedural basis for considering the defendant's motion arguing that the plaintiff was not disabled as a motion for summary judgment).  In light of the size of the plaintiff's appendix, and his stated belief that the "documents speak for themselves," Pl.'s 11/22/10 Opp'n at 2, the Court finds that the plaintiff has had "a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d).  Similarly, although the plaintiff claims that he is "entitled to further discovery on the question of how many attorneys were granted changes in production requirements as a result of medical conditions," Pl.'s 11/22/10 Opp'n at 5, that he is "entitled to produce in discovery further evidence that the transfer policy was not applied uniformly," id. at 6, and that he has requested that the defendant's motion be "held in abeyance until the completion of discovery," id. at 7, he has at no point shown "by affidavit or declaration," as required by Rule 56(d), that he "cannot present facts essential to justify [his] opposition."

Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal brackets and quotation marks omitted).  Indeed, to withstand a properly supported motion for summary judgment, the nonmoving party must cite materials in the record—such as depositions, documents, or declarations—and show that the materials cited establish a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c)(1)(A)-(B).  Finally, a supporting or opposing affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(c)(4).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.  LEGAL ANALYSIS

As noted above, the plaintiff brings this action under the Rehabilitation Act and Title VII. The Court will address the plaintiff's claims under these two statutes in turn.

A.  The Plaintiff's Rehabilitation Act of 1973 Claim

"[T]he Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals and further requires agencies to make reasonable accommodations for persons with disabilities unless such accommodations would impose undue hardship on the agency."  Nurriddin v. Bolden, 674 F. Supp. 2d 64, 82 (D.D.C. 2009). Thus, "[t]o sustain a disability claim under the Rehabilitation Act, a plaintiff must as a threshold matter establish that he or she has a disability."  Rand, 609 F. Supp. 2d at 102 (citing Bonieskie v. Mukasey, 540 F. Supp. 2d 190, 197 (D.D.C. 2008)). An individual is disabled if he: (1) has "a

physical or mental impairment that substantially limits one or more of [his] major life activities,"
(2) has "a record of such impairment," or (3) has been "regarded as having such an impairment."
42 U.S.C. § 12102(1);[4] see also 29 U.S.C. 705(20)(B) (incorporating into the Rehabilitation Act
the ADA's definition of disabled individual); Nurriddin, 674 F. Supp 2d at 83 n.15 (explaining
that because the liability standards are the same for both the ADA and the Rehabilitation Act,
cases interpreting either statute are applicable in defining the term "disability").  To be
substantially limiting, "an 'impairment's impact must . . . be permanent or long term.'"  Haynes v.
Williams, 392 F.3d 478, 482 (D.C. Cir. 2004) (quoting Toyota Motor, 534 U.S. 184, 198
(2002)).  "To establish that an impairment substantially limits the ability to work, a plaintiff must
'allege and prove that in his particular circumstances . . . his impairment prevents him from
performing a "substantial class" or "broad range" of jobs otherwise available to him.'"  Nurriddin,
674 F. Supp. 2d at 83 (quoting Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110,
1114 n.1 (D.C. Cir. 2001)).

---

[4]      Significant changes to the Rehabilitation Act and the ADA went into effect on January 1, 2009.  See Pub.
L. No. 110-325 (2009).  Congress made these changes to, among other things, clarify that the Supreme Court, in
Toyota Motor Mf.g, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), had "interpreted the term 'substantially limits'
to require a greater degree of limitation than was intended by Congress."  Pub. L. No. 110-325 (a)(7).  The District
of Columbia Circuit has held that the amendments are not retroactive, Lytes v. D.C. Water and Sewer Auth., 572
F.3d 936, 938-42 (D.C. Cir. 2009), and that where the allegedly discriminatory conduct predates the amendments
that took effect on January 1, 2009, "courts are to apply the law prior to [the] enactment of the Amendments to
determine whether a person is an 'individual with a disability,'" Nurriddin, 674 F. Supp 2d at 82, n.14 (quoting
Lytes, 572 F.3d at 942)).
        Here, the plaintiff alleges that he was disabled and that the defendant failed to accommodate his disability
"from a period beginning in November . . . 2008 and continuing into March 2009 and thereafter"—dates occurring
both before and after the enactment of the January 2009 amendments.  2d Am. Compl. ¶ 2.  The defendant has failed
to present any argument whatsoever about which standard should apply, and the plaintiff offers only unsupported
assertions.  See Pl.'s 11/22/10 Opp'n at 2 (observing that the "documentation that [the p]laintiff was a qualified
individual with a disability under the law both before and after January 1, 2009" is attached); id. at 3 ("If [the
p]laintiff is entitled to summary judgment pursuant to the law prior to January 1, 2009[, he] certainly is entitled to
summary judgment pursuant to the ADA Amendments Act of 2008 that went into effect on that date.").
Nonetheless, because it concludes that the plaintiff has failed to demonstrate that he is disabled even under the more
forgiving post-amendment standard, the Court will not endeavor to determine which standard, or combination
thereof, must be applied when the allegedly discriminatory conduct occurred both before and after the enactment of
the amendments.

Here, it is clear from the record that, while the plaintiff does suffer from various physical and mental impairments, these impairments do not rise to a disability within the meaning of the Rehabilitation Act, as they do not substantially limit him in the major life activity of working.[5] In an undated document described by the plaintiff only as "medical records," see Pl.'s 11/22/10 Opp'n, App. at 1, the plaintiff, in his own words, explained his belief that "[his] hostile work environment [was] having an adverse effect on [his] physical and mental health," id. at 24, and that he had "proven in the past that [he could] perform on a fully successful level within the system," id., though he felt that he "need[ed] to be transferred from [his] hostile work environment to another decision team for the sake of his health," id.  Furthermore, the record indicates that the plaintiff's treating psychiatrist believed that

---

[5]        The plaintiff does not make specific allegations with respect to the limiting nature of his impairments.  He states merely that he "was a qualified individual with a disability," Pl.'s 11/22/10 Opp'n at 2, and that reports of his doctors illustrate

> medical conditions that substantially impair major life activities.  The conditions are far more
> extensive tha[n] not being able to work for a particular supervisor. . . . These conditions exist
> outside the workplace and meet the requirements of federal disability law . . . . [The p]laintiff has a
> disability under the previous ADA and the one as Amended.

Id. at 3-4.  As noted above, however, an individual is disabled within the meaning of the Rehabilitation Act only if he: (1) has "a physical or mental impairment that substantially limits one or more of [his] major life activities," (2) has "a record of such impairment," or (3) has been "regarded as having such an impairment."  42 U.S.C. § 12102(1) (emphasis added).  Becasue "[i]t is the plaintiff's burden to prove that he is disabled," Haynes, 392 F.3d at 478, and because the definition of disabled hinges upon questions of substantial limitation to one or more major life activities, logic demands that the plaintiff also prove that his impairments substantially limit at least one major life activity.  Drawing all justifiable inferences in favor of the plaintiff as the nonmoving party and accepting the plaintiff's evidence as true, Anderson, 477 U.S. at 255, the Court construes the plaintiff's allegations as setting forth a failure to accommodate claim based on his employer's failure to accommodate the fact that he was substantially limited in the major life activity of working.

        It also is perhaps worth noting that the second and third bases on which an individual may claim to be disabled within the meaning of the Act—having a record of a substantially limiting mental or physical impairment or being regarded as having such an impairment—are not at issue here, as the plaintiff has presented no evidence that anyone at the VA regarded him as having a substantially limiting impairment or as having a record of such an impairment.  The plaintiff denies "that management was unaware of his health problems prior to Dr. Perman's letter," Pl.'s 11/22/10 Resp. to Def.'s Facts ¶ 4, but even assuming for the sake of argument that an employer's awareness of an employee's health problems could qualify as a disability under either the second or third basis, the plaintiff offers nothing more than this "mere denial," which is insufficient to create a triable issue of fact, Burke, 286 F.3d at 517.

> [b]ased on his performance prior to working under Judge Bohan, Mr. Klute's prognosis is excellent should he be given a reasonable accommodation and be allowed to transfer to another decision team and judge, with appropriate relief from the quota system during his absence. . . . The medical basis for my decision is that Mr. Klute had previously received "fully successful" performance reviews prior to working for Judge Bohan, his relationships were fine with [three other judges], and another judge viewed his work as "outstanding" even while he was writing for Judge Bohan.

Id. at 27.  Both the plaintiff and his doctor therefore believed that the plaintiff could again be a successful staff attorney at the VA if he had a different supervisor and if he could "start[] afresh with a clean slate."  Def.'s Mot., Ex. 3 (Dec. 9, 2008 Perman Letter) ¶ 25.  Moreover, the record makes several references to the fact that even after the plaintiff began to suffer from the Adjustment Disorder, his claimed mental disability, he received a positive review from another judge.  See, e.g., Pl.'s 11/22/10 Opp'n, App. at 26 (Dec. 29, 2008 Perman Letter) ("He even received an 'outstanding' rating from a different judge while working for Judge Bohan in September 2008.").  The evidence before the Court, therefore, does not show that the plaintiff's impairments "prevented him from performing a 'substantial class' or 'broad range' of jobs otherwise available to him," Nurriddin, 674 F. Supp. 2d at 83 (quoting Duncan, 240 F.3d at 1114 n.1); indeed, they did not even prevent him from performing the duties of a staff attorney at the VA.  Rather, the evidence before the Court shows that the plaintiff was dissatisfied with his supervisor and his work environment.  There is an abundance of authority making clear that impairments developed or exacerbated under such circumstances do not constitute a disability under the Rehabilitation Act.  See, e.g., Haynes, 392 F.3d at 483 (observing that the plaintiff had conceded that if "the symptoms of an impairment are brought on by a single workplace, such an impairment is not substantially limiting within the meaning of the ADA"); id. ("If the impact of an impairment can be eliminated by changing the address at which an individual works, that

impairment is neither permanent nor long term."); <u>Gonzagowksi v. Widnall</u>, 115 F.3d 744, 746-47 (10th Cir. 1997) (explaining that the plaintiff claimed disability in the form of "an anxiety disorder that arose from conflicts with his supervisor and poor performance reviews," and the district court's finding that the plaintiff's "mental impairment seem[ed] to be limited to and arise out of a specific stressful work situation," was "[a]n impairment of such narrow scope [that it did] not qualify as a disability"); <u>Nurriddin</u>, 674 F. Supp. 2d at 84 (acknowledging that the plaintiff had "effectively conceded that he [was] not precluded from a broad range of jobs by alleging that he [could] work outside the negative atmosphere that existed within [his employment division]"); <u>Rand</u>, 609 F. Supp. 2d at 103-04 (concluding that the plaintiff was not disabled within the meaning of the Rehabilitation Act because the "evidence on which she [had] relie[d] show[ed], at most, that to the extent her impairment interfere[d] with her ability to work, it only limit[ed] her ability to work in her particular office environment"); <u>Stroman v. Blue Cross and Blue Shield Assoc.</u>, 966 F. Supp. 9, 11 (D.D.C. 1997) (noting that the plaintiff's "alleged inability to perform a particular job or work for a particular supervisor will not, without more, qualify her as disabled").  The Court thus concludes that the plaintiff is not disabled within the meaning of the Rehabilitation Act because he is not substantially limited in his ability to work. Accordingly, the defendant is entitled to judgment as a matter of law on the plaintiff's disability discrimination claims.

     B.  <u>Title VII of the Civil Rights Act of 1964</u>

     Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. 2000e-

2(a)(1).  Although this section of the statute applies only to private employers, another section of

Title VII clarifies that its prohibitions apply to federal agencies as well.  42 U.S.C. 2000e-16(a).

In disparate treatment suits alleging violations of Title VII, a plaintiff can prove his case either

with direct evidence of discrimination or by indirectly proving a prima facie case under the

familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802 (1973).  The District of Columbia Circuit has, however, made clear that when deciding

motions for summary judgment in a case in which the employer has asserted a legitimate,

nondiscriminatory reason for its allegedly discriminatory employment decision, the district court

should not consider whether the plaintiff has satisfactorily proven his prima facie case:

> In a Title VII disparate-treatment suit where an employee has suffered an adverse
> employment action and an employer has asserted a legitimate, non-discriminatory
> reason for the decision, the district court need not—and should not—decide
> whether the plaintiff actually made out a prima facie case under McDonnell
> Douglas. Rather, in considering an employer's motion for summary judgment or
> judgment as a matter of law in those circumstances, the district court must resolve
> one central question: Has the employee produced sufficient evidence for a
> reasonable jury to find that the employer's asserted non-discriminatory reason was
> not the actual reason and that the employer intentionally discriminated against the
> employee on the basis of race, color, religion, sex, or national origin?

Brady v. Office of the Seargeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

The plaintiff asserts that he was discriminated against on the basis of sex and race when

the VA refused his request to transfer to a different decision team.[6]  2d Am. Compl. ¶¶ 12-13.

His opposition sheds further light on the basis for this claim: "[A]ttorneys are moved from

decision teams on a regular basis for any reason or no reason at all."  Pl.'s 11/22/10 Opp'n at 6.

---

[6]      The Second Amended Complaint only alleges sex and race discrimination on the basis of the defendant's refusal to transfer him to a new decision team, not on the basis of the defendant's refusal to reduce his caseload. Accordingly, although the defendant makes arguments in his Opposing Points and Authorities seemingly aimed at supporting a Title VII claim with respect to the defendant's failure to grant him a quota reduction, the Court will not consider those arguments, as the Second Amended Complaint does not assert such a claim.

He cites an e-mail from Steve Keller[7] to several VA attorneys "cavalierly discuss[ing]," id.,

attorney moves and argues that this e-mail demonstrates that the defendant's refusal to transfer

him demonstrates "obvious pretext," id.  The plaintiff additionally contends that Mr. Keller's

admission that Jeanne Schlegal, "a female without a disability," was transferred to a different

decision team is further evidence of discrimination.  Pl.'s Opp'n at 4.  The defendant, on the other

hand, asserts that the plaintiff was not transferred because he had not achieved the requisite grade

for a transfer and because he had performance issues.  Def.'s Mem. at 15.  The defendant also

maintains that Jeanne Schlegal's transfer was the result of exceptional circumstances, entirely

different from those alleged by the plaintiff, and that she and the plaintiff are therefore not

similarly situated employees.  Def.'s Reply at 5-6.  The defendant hving articulated a legitimate,

nondiscriminatory reason for his refusal to transfer the plaintiff to a different decision team,

under the instructions of Brady, the Court must now determine whether the plaintiff has

produced sufficient evidence from which a reasonable jury could find that the VA's asserted non-

discriminatory reason was not the actual reason and that the VA intentionally discriminated

against the plaintiff on the basis of his race and sex.  And the Court's review of the record shows

that he has not.

The Court finds two reasons which support the conclusion that the plaintiff has not met his

burden under Brady.  First, it is undisputed that the plaintiff began his employment at the VA at

the GS-11 level, and had reached the GS-13 level when he retired on April 1, 2010.  2d Am.

Compl. ¶ 7.  The August 26, 2009 e-mail from Steve Keller that the plaintiff contends supports

his argument that the VA's decision not to move him to a different decision team was

---

[7]        At the time the e-mail was sent, Mr. Keller was the Vice Chairman of the Board of Veterans' Appeals.
Def.'s Mot., Declaration of Steven Keller ("Keller Decl.") ¶ 1.

discriminatory begins: "As you know, GS-14 level attorneys (and, if necessary, a few senior GS-

13 attorneys) will be rotated among the Decision Teams to provide exposure to new ideas, new

colleagues[,] and scenic new locations with the Board's demesne." Pl.'s 11/22/10 Opp'n, App. at

48. The reasons for the rotation are insignificant as the e-mail clearly explains the eligibility

requirements for transfer—attainment of a certain grade level. In his deposition, Mr. Keller

explained further:

> In those instances where the distribution of GS-14 attorneys per Team is
> insufficient to enable equal staffing transfer among the Teams, a few senior GS-13
> attorneys may also be reassigned along with the GS-14s in order to achieve
> balance. . . . The GS-13s [who] rotate are chosen among GS-13s who: 1) have two
> years' time-in-grade, which is generally required for promotion to GS-14, 2) do not
> have pending conduct or performance problems, and 3) are the top performers
> from among GS-13s. Attorney preference or aversion for reassignment is not
> considered in this determination.

Def.'s Mot., Keller Decl. ¶¶ 3-4. The Court notes as an initial matter that the record is entirely

silent on when the plaintiff attained GS-13 status; there is therefore no evidence from which a

jury could assess whether he had two years' time-in-grade. Furthermore, it is undisputed that the

plaintiff had experienced performance issues in the form of poor reviews from Judge Bohan. See

Def.'s Mot., Ex. 1 (Nov. 17, 2008 E-mail) (noting that the "current professional work

relationship" between the plaintiff, "Judge Bohan and [Deputy Vice Chairman] Cohn [did] not

appear to be working out"); see also Def.'s Mot., Keller Decl. ¶ 5 ("When the GS-13 attorney(s)

were selected for reassignment in or around September 2009, [the plaintiff], although a GS-13,

was experiencing significant performance problems and was not one of the top performing GS-

13s. Hence, he was not among those GS-13 attorneys who were transferred on October 1,

2009."). Thus, the evidence does not tend to indicate that the defendant's asserted legitimate,

nondiscriminatory reason for refusing to transfer him—that he was not eligible for transfer under

the VA's policy—is unworthy of credence; indeed, the plaintiff's own evidence supports the

defendant's proffered reason.  See 2d Am. Compl. ¶ 15; Pl.'s 11/22/10 Opp'n, App. at 25, 26.

Next, the plaintiff's attempt to compare his circumstances to those of Jeanne Schlegal's

transfer falls flat.[8]  The record indicates that Ms. Schlegal's transfer was directed by the

Secretary of the VA to prevent the White House Office of Special Counsel from investigating

"the Board's flexi-place program," a program that allowed VA staff to work from home.  Pl.'s

11/22/10 Opp'n, App. at 51; see also Def.'s Reply, Affidavit of Steven Keller to EEO Investigator

("Keller EEO Aff.") ("And the Secretary intervened and said give her what she wants because I

don't want this congressman to jeopardize the entire [work-from-home] program.").  Although

the exact nature of the circumstances leading to Ms. Schlegal's transfer are unclear, see Pl.'s

11/22/10 Opp'n, App. at 51 (indicating that Ms. Schlegal believed she was targeted as a

whistleblower who had complained about the attendance issues of a Board of Veterans' Appeals

judge); Def.'s Reply, Keller EEO Aff. 9:12-15 (suggesting that Ms. Schlegal was disciplined for

engaging in disrespectful conduct to a judge), enough is known about her transfer to make it

perfectly clear that her and the plaintiff's circumstances were not similar.  Because the law in this

Circuit is clear that "'[i]n the absence of evidence that the comparators were actually similarly

situated'  to [the plaintiff], an inference of falsity or discrimination is not reasonable,"

Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008) (quoting Waterhouse v. District of

Columbia, 298 F.3d 989, 995-96 (D.C. Cir. 2002)), a reasonable jury could not infer that the

VA's refusal to transfer the plaintiff to a different decision team although it had granted Ms.

---

[8]       The Court observes that an e-mail sent by Ms. Schlegal to the plaintiff, apparently in response to an inquiry
from the plaintiff into the nature of her transfer, indicates that she is a GS-14 level attorney.  Pl.'s 11/22/10 Opp'n,
App. at 51.  It is unclear, however, from the e-mail whether Ms. Schlegal was a GS-14 level employee at the time of
her transfer.  Id.  Neither the plaintiff nor the defendant has presented any evidence that speaks to this question.

Schlegal a transfer was for any discriminatory reason.[9]  Accordingly, as the plaintiff has failed to carry his burden of producing sufficient evidence from which a reasonable jury could conclude that the VA's legitimate, nondiscriminatory reason for refusing his requests for a transfer to a different decision team was not its actual reason for refusing his transfer request, the defendant is entitled to judgment as a matter of law on the plaintiff's Title VII claim.

## IV.  CONCLUSION

Because the plaintiff was not a disabled individual as defined by the Rehabilitation Act at the time that the VA refused his requests for a reduced caseload and a transfer to a different decision team, the defendant is entitled to judgment as a matter of law on the plaintiff's disability discrimination claims.  And because the plaintiff has not rebutted the defendant's assertion of a legitimate, nondiscriminatory reason for the refusal to transfer him to a different decision team, the defendant is entitled to judgment as a matter of law on the plaintiff's Title VII of race and sex discrimination claims.[10]

**SO ORDERED** this 9th day of January, 2012.

REGGIE B. WALTON
United States District Judge

---

[9]     The plaintiff alleges that "[m]inorities and women routinely requested . . . transfers and these requests were granted," 2d Am. Compl. ¶ 12, but he has provided no evidence to support this claim.  Furthermore, the plaintiff's most recent opposition to the defendant's motion discusses only the fact that Jeanne Schlegal was granted a transfer; it makes no reference to any other VA employees.  Pl.'s Opp'n at 4-5.

[10]     The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.